CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 18, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **JASON SCOTT LIGHT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00707 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ALLENA KOVAK, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Jason Scott Light, Pro Se Plaintiff.*

The plaintiff, a Virginia inmate proceeding pro se,[1] filed this civil rights action under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the Rehabilitation Act, the First Step Act, and Virginia law alleging that the defendants violated his rights by removing him from the facility's medication-assisted treatment (MAT) program following a disciplinary charge for misuse of Suboxone. Currently pending are motions in which Light seeks various forms of interlocutory injunctive relief, as well as a motion requesting that the court issue subpoenas for witness testimony and evidentiary materials. Upon review, I conclude that certain claims within the operative Third Amended Complaint must be dismissed and each of the

[1] According to Light's Third Amended Complaint, he was a pretrial detainee at the time he initiated this cause of action and was held at the Northwestern Adult Detention Center, a regional jail in Winchester, Virginia, where the relevant events occurred. He has since been transferred to Sussex I State Prison, a Virginia Department of Corrections facility, located in Waverly, Virginia.

pending motions must be denied. I will also direct the Clerk to notify the defendants so that they may respond to the remaining claims.

## I. BACKGROUND.

According to Light's Third Amended Complaint, he suffers from opioid use disorder (OUD) and substance use disorder (SUD). Am. Compl. 40, Dkt. No. 25-3. On May 2, 2025, as part of his participation in MAT, defendant Nurse Emily Tenney conducted a "mouth check" after Light took his prescribed Suboxone dose to "ensure that [he] d[id]n't have any diversion tools like plastic or cotton or anything to hoard, check, or take any of [his] meds back to be sold or abused." *Id.* at 13. After looking in his mouth, Tenney directed Light to spit into a cup and warned him that he would receive a disciplinary charge for hoarding the medication. Light expressed his confusion and denied any wrongdoing, although he admitted that there was "a clump of it in cup." *Id.* at 19. Tenney submitted an Incident Report the same day, describing this incident. *Id.* at 54. Light accuses Tenney of being "out to try and get [him]" based on a prior interaction between the two. *Id.* at 20. Approximately two weeks before the incident, Light experienced swelling of his legs and scrotum and sought emergency care. He states that Tenney remarked, "quit swallowing plastic and your legs won't swell." *Id.* Based on Light's "puzzled look," Tenney then stated that a "little birdy told [her]," implying that Light was "cheeking meds and swallowing plastic." *Id.* Light contends that Tenney acted unprofessionally and violated the

Health Insurance Portability and Accountability Act (HIPAA) by having this discussion in the presence of others.

On May 5, 2025, Light had a disciplinary hearing following the submission of Tenney's Incident Report. Despite pleading not guilty, the hearing board, including defendant Sgt. Mays, found Light guilty of "Misuse or Abuse of Medications, transfer medication to another, not following medication pass procedure." *Id.* at 55. Light claims that one of his own witnesses, Sgt. Lamar, was dating or married to Mays, thus, he argues there was a conflict of interest during the proceeding. He further argues that this decision was made without investigation or evidence. Light appealed the disciplinary decision, but the finding of guilt was sustained and the sanctions imposed were upheld by defendant Lt. Mackey.

As a result of the disciplinary charge, Light was removed from the MAT program; placed in disciplinary segregation for ten days "with no withdraw help no taper down nothing"; experienced withdrawal symptoms, including diarrhea, insomnia, jerking arms, and cramps; lost good time credits; and had other privileges and opportunities revoked. *Id.* at 21. Light concedes that he was offered alternative medications during that time; however, he maintains that the alternative medications do not work for him and cause health complications. Although he requested to see the doctor who approved or ordered his removal from MAT, Light asserts that such requests were denied. Regarding his removal from MAT and resulting withdrawal

symptoms, Light also names as defendants Head Nurse Allena Kovak, Assistant Nurse Angie Tanner, an unnamed facility doctor, and an unnamed medical provider. While complaining of his removal from the MAT program, Light concurrently challenges the medical officials' prior treatment practices, alleging that they had mismanaged his treatment by offering it in concentrated doses. Specifically, he states that he should receive eight milligrams twice per day, but that he was made to take all sixteen milligrams at once; therefore, his tolerance was increased by having to take a higher dosage and his withdrawals worsened as a result. *Id.* at 24.

Light filed grievances regarding his removal from the program, and he claims that defendant Captain Health Custer determined that his grievances were unfounded. Light tried to appeal the grievance decision but was reminded of a contract he had previously signed, stating that if he is caught diverting or attempting to divert MAT, he would be removed from the MAT program with no opportunity to appeal. Light argues that he signed this contract under duress because officers cautioned that he would not get treatment otherwise. He further asserts that this policy was created or adopted by defendant Superintendent Clay Corbin. Finally, Light claims that he wrote defendant Superintendent Clay Corbin to request reinstatement to the MAT program; however, Corbin denied his requests without "looking into it." *Id.* at 45.

A few months later, in October 2025, Light failed a drug screen. In a separate filing, Light explained that the prison is "filled with drugs so [he] self-medicate[s]." Letter 2, Dkt. No. 26. The drug screen, conducted by defendant Correctional Officer Schneider, resulted in a second disciplinary charge. This time, Light was sanctioned to twenty days in disciplinary segregation. Light avers that the second disciplinary charge was given in retaliation for filing this civil action and asserts that Mays was also involved.

## II. DISCUSSION.

Under 28 U.S.C. § 1915(e), which governs in forma pauperis proceedings, the court has a mandatory duty to screen initial filings. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). A pro se complaint must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 52021 (1972). But even under this standard, pro se claims are subject to sua sponte dismissal if the court determines that the complaint fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Light raises claims under § 1983, including violations of the First, Eighth, and Fourteenth Amendments to the Constitution; the ADA and Rehabilitation Act; Section 607 of the First Step Act; and Virginia law. As relief, Light requests injunctive and monetary remedies. After careful screening, I conclude that his pleading must be narrowed before service upon the defendants.

A. Section 1983 Claims.

Light's Amended Complaint lists four constitutional violations under § 1983, including violations of his First Amendment right to be free from retaliation, and his Fourteenth Amendment rights to be free from cruel and unusual punishments and to have due process and equal protection of laws. At this juncture, his claims under the § 1983 statute will be limited as follows.

First, Light's claims for injunctive relief have been rendered moot by his transfer to a different facility. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). The transfer of a prisoner generally moots any claims for injunctive or declaratory relief relating to the former institution where he was subject to the challenged policy, practice, or condition. *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007). Because Light has been transferred from the Northwestern Adult Detention Center to Sussex I State Prison, he is no longer under the control of the named defendants or the jail's policies, and his requests for injunctive and declaratory relief are moot.

Furthermore, Light is not entitled to monetary damages under § 1983 against the defendants in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Therefore, only claims for monetary

damages against the defendants in their individual capacities will go forward under § 1983.

To the extent that Light has asserted claims against Mackey and Custer regarding their participation in the jail's grievance or disciplinary appeal procedures, such claims must fail. A supervisory or administrative official's responding to a grievance or a disciplinary appeal about another official's allegedly unconstitutional actions does not place liability on the responder for the supposed underlying misdeed without evidence of the responder's personal involvement in it. *Iqbal*, 556 U.S. at 676. Thus, prison officials cannot be held liable merely for their responses to, much less their mere participation in, the grievance or disciplinary appeal proceedings. *Pace v. Dillman*, No. 7:21CV00648, 2023 WL 6147791, at *5 (W.D. Va. Sept. 20, 2023). Therefore, Light's claims against Mackey and Custer as to their participation in the grievance or disciplinary appeal process will be dismissed.[2]

Finally, Light asserts claims against Tenney for violating HIPAA. But "[a] plaintiff seeking a remedy under § 1983 'must assert the violation of a federal right, not merely a violation of federal law.'" *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir.

[2] Light raises issues related to his inability to exhaust administrative remedies; however, his contentions in this regard will only be addressed if an appropriate motion for summary judgment is filed by the defendants raising the issue of exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding that "failure to exhaust is an affirmative defense under the [Prisoner Litigation Reform Act], and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints").

2021) (quoting *Planned Parenthood S. Atl. v. Baker*, 942 F.3d 687, 696 (4th Cir. 2019)). HIPAA does not create a private right to sue that may be enforced under § 1983. *Id.* Because Light cannot state a § 1983 claim based on Tenney's alleged HIPAA violation, this claim must be dismissed. Any claims against Tenney for otherwise unprofessional conduct will, likewise, fail because verbal harassment by prison officials, without more, does not state a plausible constitutional claim under § 1983. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (unpublished).

B. ADA and Rehabilitation Act Claims.

Again, Light's claims for injunctive relief have been rendered moot by his transfer to a different facility, and he has not alleged that he is still subject to the same jail policy. Furthermore, "[n]either the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities . . . nor do these statutes authorize punitive damages." *Moneyhan*, 563 F. App'x at 258 (citations omitted); *but see Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020) (permitting ADA claims for damages against defendants in their official capacity to proceed at the motion to dismiss stage where the plaintiff plausibly alleged an ADA claim against officials who were responsible for overseeing the challenged policy). Thus, only claims against the defendants in their official capacities will go forward under the ADA and Rehabilitation Act at this time.

C. First Step Act Claims.

Light states that "Section 607 of the First Step Act of 2018 emphasizes the importance of expanding effective treatment options for incarcerated individuals and includes a goal of expanding access to MAT, which means vivitrol or naloxone is not a one size fits all cure." Am. Compl. 52, Dkt. No. 25-4. He requests that the court "allow [him] to at least get out of prison probably Oct-Dec this year." Am. Compl. 31, Dkt. No. 25-1.

First, Section 607 does not provide a mechanism for a prisoner to bring a cause of action against prison officials who have removed him from a medication-assisted treatment program. Rather, it governs the procedure by which the Bureau of Prisons must issue a report on evidence-based treatment for opioid and heroin use. More importantly, however, Light is a state prisoner and the First Step Act and its provisions regarding compassionate release are not applicable to him. *See Stith v. Younce*, No. 7:23CV00140, 2023 WL 4744706, at *2 (W.D. Va. July 25, 2023). Therefore, his claims under the First Step Act cannot proceed.

D. Pending Motions.

Light has filed four motions seeking preliminary injunctive relief, as well as a motion requesting that the court issue subpoenas for witness testimony and evidentiary materials. Upon consideration of each, I conclude that the motions must be denied.

Under the Prison Litigation Reform Act, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A party seeking interlocutory injunctive relief must state facts showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Across Light's various motions, he has maintained the same desired relief: to be placed back on Suboxone treatment. But his request for a court order to change his current medical treatment cannot be granted where it seeks to change the status quo. "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Nor has Light demonstrated a likelihood that he will suffer irreparable harm absent the requested interlocutory court intervention. While he is worried that the lack of Suboxone treatment will cause him to relapse, Light has admitted that he is receiving other medication for that purpose. In fact, he concedes that medical officials have offered him alternatives to avoid an overdose. *See, e.g.*, *Chamberlain v. Va. Dep't of Corr.*, No. 7:20-cv-00045, 2020 WL 5778793 (W.D. Va. 2020) (determining that a plaintiff has failed to

demonstrate that he will suffer irreparable harm when he acknowledged that he is receiving treatment for his OUD). Thus, Light has failed to make a "clear showing" that he is entitled to the extraordinary relief that would be provided by a preliminary injunction. *Winter*, 555 U.S. at 22.

In addition to requesting Suboxone treatment, Light has asked that the court direct the defendants to implement a policy change to help addicts. To consider whether such prospective relief is warranted, courts "shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A). The Supreme Court has acknowledged that the operation of a prison is an "extraordinarily difficult undertaking," and prison administrators should be free to exercise their discretion "without being subject to unduly crippling constitutional impediments." *Wolff v. McDonnell*, 418 U.S. 539, 566–67 (1974). Light has failed to explain how his request is the least intrusive means necessary to correct the complained of harm, particularly where Light's pleadings show that the jail already provides the MAT program to qualifying inmates. Thus, in consideration of the necessary discretion afforded to jail and prison administrators, I conclude that the prospective relief requested is not warranted.

Light has further complained that he lost his paperwork upon his transfer to a new facility and has requested that the court contact the property officer at his prior

facility so that certain missing property items may be returned. The court cannot award injunctive relief based on new claims not raised in the Complaint. *See Rice v. Dotson*, No. 7:25-cv-00234, 2025 WL 2969101, at *2 (W.D. Va. Oct. 20, 2025) ("[A] motion for a preliminary injunction must be related to the underlying complaint; it is not an appropriate vehicle for asserting new claims.") (citing *Omega World Travel, Inc. v. Trans. World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). Even so, in the prison context, "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984). Therefore, "if a meaningful postdeprivation remedy for the loss is available," the inmate has no constitutional claim. *Id.* at 533. Should Light wish to obtain specific documents within the court's file, he may submit a letter to the Clerk to request that copies be mailed to him for a fee.

Finally, Light seeks to subpoena documentary evidence and witness testimony from certain individuals. At this time, Light's request is premature given that the lawsuit has not been served.

## III. Conclusion.

Accordingly, it is **ORDERED** as follows:

1. Light's claims for injunctive relief are dismissed as moot;

2. Light's claims under § 1983 against the defendants in their official capacities are dismissed;
3. Light's claims against the defendants regarding their participation in the jail's grievance or appeal procedures are dismissed;
4. Light's HIPAA claims are dismissed;
5. Light's claims under the ADA and Rehabilitation Act against the defendants in their individual capacities are dismissed;
6. Light's claims under the First Step Act are dismissed;
7. The motions seeking preliminary injunctive relief, Dkt. Nos. 10, 16, 27, & 35, are denied;
8. The motion requesting a subpoena for witness testimony and various evidentiary materials, Dkt. No. 9, is denied;
9. The Clerk shall cause the defendants to be notified of this action under Rule 4 of the Federal Rules of Civil Procedure;
10. The defendants shall thereafter respond to the following remaining claims: First Amendment Retaliation claims for monetary damages against the defendants in their individual capacities, Eighth Amendment Deliberate Indifference claims for monetary damages against the defendants in their individual capacities, Fourteenth Amendment Equal Protection and Due Process claims for monetary damages against the defendants in their

individual capacities, ADA and Rehabilitation Act claims against the defendants in their official capacities, and Virginia law claims.

11. The court having previously assessed a filing fee in this case, and Light having returned an executed Inmate Consent to Withholding form, Light is granted leave to proceed in forma pauperis to the extent Light will not pay for service of process and may pay the filing fee via installments;

12. The Clerk is directed to forward a copy of Light's signed consent to withholding form to the Trust Accounts Officer at Light's current place of confinement;

13. The collection of the filing fee shall commence. The Trust Accounts Officer at Light's current place of confinement, and at all subsequent places of confinement, is hereby authorized to collect the fees as agreed to by Light on the signed consent form, and to remit such fees in accordance with 28 U.S.C. § 1915(b). The Trust Accounts Officer at Light's present institution is requested to place the signed consent to withholding form in Light's file so that it might accompany the inmate in the event of his transfer. Should Light be transferred to another institution, the balance due for the civil action will be inserted in Light's file so that the appropriate officer at the next institution will remit the debt owed to the Clerk, U.S. District Court, 210 Franklin Road SW, Suite 540, Roanoke, Virginia

24011-2208. The Trust Accounts Officer is requested to reference the case number of this action on payments sent to the court;

14. The parties are advised that briefs, motions, and responses thereto shall be filed in compliance with the Federal Rules of Civil Procedure and the court's Local Rules;

15. Light shall notify the court immediately upon his release or transfer and shall provide his new address. Failure to notify the court of such a change of address in writing will result in the dismissal of this case; and

16. The parties are advised that pursuant to a Standing Order of Court, all non-dispositive matters in this case will be referred to a United States Magistrate Judge.

ENTER: September 18, 2026

/s/ JAMES P. JONES
Senior United States District Judge